UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| PAUL DEAN JENSEN JR., <br><br> Plaintiff, <br><br> vs. <br><br> DARREN YOUNG, WARDEN; and JASON RAVNSBORG, <br><br> Defendants. | 4:18-CV-04041-RAL <br><br><br> OPINION AND ORDER GRANTING RESPONDENTS' MOTION TO DISMISS |

Petitioner, Paul Dean Jensen Jr. (Jensen) filed a pro se petition under 28 U.S.C. § 2254 for a writ of habeas corpus alleging that his 200-year sentence with the possibility of parole is cruel and unusual punishment violating the Eighth Amendment and contravening the holdings of Graham v. Florida, 560 U.S. 48 (2011), Miller v. Alabama, 567 U.S. 460 (2012), and Montgomery v. Louisiana, 136 S. Ct. 718 (2016). Docs. 1, 11. Defendants Darren Young, Warden of the Mike Durfee State Prison, and Marty Jackley,[1] then Attorney General of the State of South Dakota, moved to dismiss Jensen's petition, arguing that the petition fails to state a claim upon which relief can be granted because Jensen was resentenced in June 2016 in accordance with recent Supreme Court precedent. Docs. 9, 10. For the reasons explained below, the 200-year sentence imposed on Jensen with the possibility of parole does not contravene the provision of the Eighth

---

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, Marty Jackley's successor in the office of South Dakota Attorney General is automatically substituted as the named party in a case of this nature.

1

Amendment prohibiting cruel and unusual punishment as interpreted in Graham, Miller, and Montgomery. Therefore, Defendants' motion to dismiss is granted.

I.  **Procedural Background**

On January 14, 1996, fourteen-year-old Jensen and his co-defendant Shawn Springer—after discussing a plan to do so—kidnapped and robbed Michael Hare, and Jensen then murdered Hare.[2] South Dakota v. Jensen, 1998 SD 52, ¶¶ 3–13, 579 N.W.2d 613, 615–16. After being transferred to adult court, Jensen was tried before a jury and found guilty of first degree murder, kidnapping, and various other charges. Id. ¶ 17, 579 N.W.2d at 616; Doc. 10-1 at 2. On November 26, 1996, Judge Steven L. Zinter of the Sixth Judicial Circuit of the State of South Dakota held a sentencing hearing. Doc. 10-5. Jensen was sentenced to life in prison without parole[3] in accordance with South Dakota statutes in 1996. Jensen, 1998 SD 52, ¶¶ 62, 64, 579 N.W.2d at 624–25. Judge Zinter then informed Jensen that the time for taking an appeal was thirty days and appointed counsel to represent Jensen on appeal. Doc. 10-5 at 3.

Jensen filed a direct appeal to the Supreme Court of South Dakota challenging various issues. Jensen, 1998 SD 52, ¶ 18, 579 N.W.2d at 616. That court held, in part, that Jensen's transfer to adult court was supported by substantial evidence and that the sentence of life imprisonment without the possibility of parole was not cruel and unusual punishment. Id. ¶¶ 55, 64, 579 N.W.2d at 623, 625. However, the court noted that "the characterization of his plight as 'without any chance of freedom' is not entirely accurate. There is always the chance the legislature will pass new laws that will lessen Jensen's term in prison." Id. ¶ 62 n.1, 579 N.W.2d at 624 n.1.

---

[2] A more complete factual background of the kidnapping and ultimate murder of Michael Hare can be found at South Dakota v. Jensen, 1998 SD 52, 579 N.W.2d 613.
[3] Under SDCL § 24-15A-32 (both the present and 1996 form), a defendant who receives a life sentence is "not eligible for parole."

Following Miller, in which the Supreme Court of the United States held that a juvenile homicide offender could not be sentenced to life in prison without parole absent consideration of the mitigating factors of youth, 567 U.S. at 489, on June 20, 2013, Jensen filed a motion to correct an illegal sentence in state court, South Dakota v. Jensen, 2017 SD 18, ¶ 5, 894 N.W.2d 397, 399; Doc. 10 at 5–6. The state court issued several Orders to Stay due to uncertainty about the retroactive applicability of Miller. Doc. 10 at 6. On January 25, 2016, the Supreme Court of the United States decided Montgomery, holding that Miller constitutes a substantive rule of constitutional law, which applies retroactively in juvenile murder cases, Montgomery, 136 S. Ct. at 736.

On June 2 and 3, 2016, Judge John L. Brown of the Sixth Judicial Circuit of the State of South Dakota held a resentencing hearing for Jensen. Jensen, 2017 SD 18, ¶ 5, 894 N.W.2d at 399; Doc. 10-1. "[B]oth the State and Jensen presented expert testimony on the mitigating qualities of Jensen's youth, namely evidence related to Jensen's childhood and Jensen's emotional, social, psychological, and intellectual attributes as a juvenile offender [and on] on Jensen's changed, matured character as an adult." Jensen, 2017 SD 18, ¶ 5, 894 N.W.2d at 399. After considering Miller, Montgomery, the evidence presented, mitigating qualities of youth, the nature and circumstances of the crimes, and the prospects for rehabilitation, Judge Brown resentenced Jensen to 200 years in prison for the first-degree murder conviction and 200 years in prison for the kidnapping conviction, with the sentences to run concurrently. Id. ¶¶ 5, 22, 894 N.W.2d at 399, 403; Doc. 10-1. Judge Brown then informed Jensen that the time for taking an appeal was thirty days and appointed counsel to represent Jensen on appeal. Doc. 10-1 at 4. Jensen timely filed a notice of appeal to the Supreme Court of South Dakota. See Doc. 10-7 at 1.

On April 19, 2017, the Supreme Court of South Dakota affirmed Jensen's June 3, 2016 sentence and held that Jensen's sentence was not a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Jensen, 2017 SD 18, ¶ 18, 894 N.W.2d at 402. The court determined that Jensen's sentence comported with Miller, which held that the Eighth Amendment forbids sentencing schemes that mandate life in prison without parole for juveniles, 67 U.S. at 489, because Jensen received an individualized sentence and did not receive a mandatory life sentence without the possibility of parole, Jensen, 2017 SD 18, ¶¶ 16–18, 856 N.W.2d at 402. The court reasoned that Jensen's 200-year sentence is not the functional equivalent of a life sentence because he has the opportunity for release at age 39. Id. ¶¶ 13, 16, 856 N.W.2d at 401–02.

The court also determined that Judge Brown did not abuse his discretion or abdicate his sentencing discretion to the parole board by saying:

> Looking at this, this is somewhat unique. I was thinking there's not very many people that are sentenced to the penitentiary for any period of time that have an opportunity to come back before the Court after a period of, a significant period of time beyond the two years that's available and really have a full-blown resentencing hearing.
>
> As I said, I thought that was unique and then I got to thinking a little more about that. Actually, that's what our parole system is. Maybe this Court doesn't sit as a parole board. The Court probably isn't well equipped to perform that function.

Id. ¶¶ 19–22, 856 N.W.2d at 402–03. The court reasoned that Judge Brown "did not leave for the parole board to decide Jensen's sentence," but instead decided Jensen's sentence "after weighing and considering all the evidence presented, the mitigating qualities of youth, the circumstances of Jensen's crime, and Jensen's prospects for rehabilitation." Id. ¶ 22, 856 N.W.2d at 403.

Jensen then filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this Court on April 18, 2018. Doc. 1. Following a preliminary review of the petition pursuant to

4

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court ordered Defendants to respond. Doc. 6. Defendants filed a motion to dismiss Jensen's petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2254(d)(1) and (2), Doc. 9, and submitted a memorandum in support of that motion, Doc. 10.

## II. Discussion

### A. Statute of Limitations

A person in custody pursuant to a state court judgment may petition a federal district court for a writ of habeas corpus on the ground that he or she is in custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2254. The prisoner is eligible for "relief if the underlying state court merits ruling was 'contrary to, or involved an unreasonable application of, clearly established Federal law' as determined by [the Supreme] Court." Virginia v. LeBlanc, 137 S. Ct. 1726, 1727, reh'g denied, 138 S. Ct. 35 (2017) (quoting 28 U.S.C. § 2254(d)(1)). Jensen's petition was filed after the enactment of Antiterrorism and Effective Death Penalty Act (AEDPA). Pub. L. No. 104–132, 110 Stat. 1214 (1996); Doc. 1. Therefore, AEDPA applies to this petition. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); see also Ryan v. Clarke, 387 F.3d 785, 789 (8th Cir. 2004). Under 28 U.S.C. § 2244(d)(1), a petition for writ must be filed within a one-year period. See also McMullan v. Roper, 599 F.3d 849, 851 (8th Cir. 2010); Boston v. Weber, 525 F.3d 622, 624 (8th Cir. 2008). The one-year AEDPA statute of limitations runs from the latest of four specified dates, one of which is relevant here: "(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" 28 U.S.C. § 2244(d)(1)(C).

Jensen maintains that he is being held in violation of the Eighth Amendment and relies on three cases decided in the last eight years by the Supreme Court of the United States, Graham v. Florida, Miller v. Alabama, and Montgomery v. Louisiana. Doc. 11. Such reliance would prompt application of § 2244(d)(1)(C) to determine the proper start date for AEDPA's one-year statute of limitations, but only if certain prerequisites are satisfied. In order for § 2244(d)(1)(C) to apply, the new constitutional right asserted must be present in Jensen's case, and, if present, the right must have retroactive application to cases on collateral review. 28 U.S.C. § 2244(d)(1)(C). Montgomery retroactively applied Miller, making the date Montgomery was decided, January 25, 2016, the proper start date for AEDPA's one-year statute of limitations on Jensen's claim. See Montgomery, 136 S. Ct. at 732. However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Jensen had an applicable pending claim in state court, which tolled the one-year statute of limitations until 90 days after the April 19, 2017 holding of the Supreme Court of South Dakota affirming Jensen's sentence. See Boston, 525 F.3d at 624 (state conviction becomes final after all direct appeals are final, followed by ninety days to file a petition for certiorari); Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853 (8th Cir. 2003) (same); Springer v. Dooley, No. 3:15-CV-03008-RAL, 2015 WL 6550876, at *3–4 (D.S.D. Oct. 28, 2015) (retroactive application of new constitutional rights applies to cases on collateral review (citing 28 U.S.C. § 2244(d)(1)(C))). Jensen filed his federal habeas petition on April 18, 2018, thereby within the AEDPA statute of limitations.

**B. Graham v. Florida Challenge**

In Graham, a juvenile was sentenced to life imprisonment for armed burglary and 15 years imprisonment for attempted armed robbery following a conviction for violation of probation. 560 U.S. at 57. Because Florida had abolished its parole system, Graham had no possible opportunity for early release, except executive clemency. Id. The Supreme Court used the categorical approach in analyzing whether the Constitution permits such sentencing schemes. Id. at 61–62 (noting that the challenge was not "to a particular defendant's sentence, but [rather] a sentencing practice itself"). The Supreme Court observed that the age of the offender and the nature and circumstances of the crime were important to consider in determining what sentence is appropriate for juveniles. Id. at 62–69.

The Supreme Court noted many differences between juveniles and adults; juveniles have an undeveloped sense of responsibility, are more susceptible to negative influences, and do not have fully developed character traits deserving of the most severe punishment.[4] Id. at 68; see also Roper v. Simmons, 543 U.S. 551, 569 (2005) (comparing further differences); Thompson v. Oklahoma, 487 U.S. 815, 835–36 (1988) (same). As for the nature of the offense, the Supreme Court reiterated that juveniles "who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving" of life imprisonment without parole as compared to murderers. Graham, 560 U.S. at 69; see also Kennedy v. Louisiana, 554 U.S. 407, 421 (2008) (applying standard to adult defendant). Finally, penological goals did not justify juvenile sentences of life without parole because juveniles are less culpable and less susceptible to deterrence, and because

---

[4] Because the imposition of the death penalty on offenders who were juveniles at the time of their offense violates the Eighth and Fourteenth Amendments, Roper v. Simmons, 543 U.S. 551, 568 (2005), the Supreme Court determined that the most severe and available punishment for juveniles is life imprisonment without the possibility of parole. Graham, 560 U.S. at 70–71.

a State should not predetermine that a juvenile is incapable of rehabilitation. Graham, 560 U.S. at 71–75.

The Supreme Court ultimately held that the imposition of life imprisonment without parole for juveniles in nonhomicide crimes is prohibited by the Eighth Amendment. Id. at 74. The Supreme Court did not focus as much on the nominal classification of the sentence, whether a life sentence or term-of-years, but found it unconstitutional to sentence a nonhomicide juvenile offender to a "sentence [that] guarantees [the offender] will die in prison without any meaningful opportunity to obtain release." Id. at 79. The Court clarified the scope of its prohibition:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

Id. at 75. Thus, if the State imposes a life sentence on a juvenile nonhomicide offender, it must provide the juvenile "with some realistic opportunity to obtain release before the end of that term." Id. at 82.

Jensen's focal contention is that his 200-year sentence with the possibility of parole is the functional equivalent of a life sentence because his parole is discretionary and does not afford him a "meaningful opportunity" to obtain release as defined in Graham. Doc. 11 at 6. However, the "meaningful opportunity to obtain release" standard outlined in Graham specifically does not apply to juveniles such as Jensen who have been convicted of homicide crimes. See Graham, 560

U.S. at 82; Garza v. Frakes, No. 8:17CV474, 2018 WL 1710183, at *3 (D. Neb. Apr. 9, 2018) ("[Petitioner] is unable to cite to any Supreme Court authority clearly holding that a discretionary sentence like his—a term of years for murder with the possibility of parole within his lifetime—is equivalent to a life sentence without the possibility of parole and is cruel and unusual punishment in violation of the Eighth Amendment."); Laird v. Ryan, No. CV-17-00482-PHX-JAT, 2018 WL 4112150, at *1–2 (D. Ariz. Aug. 29, 2018), appeal docketed, No. 18-16634 (9th Cir. Aug. 30, 2018) (holding that Graham does not apply to petitioner's 129-year aggregate sentence for various crimes and a consecutive life sentence with the possibility of release after 25 years in prison for a homicide offense).

Additionally, even if Jensen was not a homicide offender, Miller does not necessarily mean that a sentence of life *with* the possibility of parole for a juvenile offender is unconstitutional. See Miller, 567 U.S. at 465 ("[M]andatory life *without* parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" (emphasis added)); Graham, 560 U.S. at 82 ("The Constitution prohibits the imposition of a life *without* parole sentence on a juvenile offender who did *not commit homicide*." (emphasis added)). The Eighth Circuit has noted that Graham's holding is limited by its terms. United States v. Spires, 628 F.3d 1049, 1055 n.3 (8th Cir. 2011) (refusing to "broaden the analysis" of Graham to determine the constitutionality of using prior convictions to enhance the sentence of a convicted adult); United States v. Scott, 610 F.3d 1009, 1018 (8th Cir. 2010) (Graham established a constitutional limit only "on certain sentences"). Many courts, both state and federal, have wrestled with the application of Graham's holding to a term-of-years sentence when the term does not hold promise for parole or release. See, e.g., Bunch v. Smith, 685 F.3d 546, 552 (6th Cir. 2012) ("[C]ourts across the country are split over whether Graham bars a court from sentencing a

juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy."). However, Jensen's sentence involves the possibility of parole within his life expectancy.

When a term-of-years sentence includes the possibility of parole, courts have found no Graham violation if the defendant becomes eligible for parole within his or her expected lifetime. See, e.g., United States v. Mathurin, 868 F.3d 921, 935 (11th Cir. 2017) (holding that the defendant's sentence comported with Graham when, taking into account the defendant's maximum good-time credit available, he could be released within his expected lifetime at age 67), cert. denied, 139 S. Ct. 55 (2018), reh'g denied, 139 S. Ct. 585 (2018); Hart v. Beard, No. SACV152129RPLA, 2016 WL 8456753, at *5 (C.D. Cal. Nov. 16, 2016) (holding that petitioner's sentence did not violate any constitutional standards because he "still had significant life expectancy" after age 51 when he becomes eligible for parole), report and recommendation adopted, No. SACV152129RPLA, 2017 WL 901086 (C.D. Cal. Mar. 6, 2017); Springer, 2015 WL 6550876, at *5–8 (holding that a 261-year sentence where the defendant would be eligible for parole at the age of 49 was not a de facto life without the possibility of parole sentence as prohibited by Graham); Moulayi v. Long, No. SA CV 13–31–JLS (PLA), 2015 WL 4273332, at *14 (C.D. Cal. Feb. 3, 2015) ("Because petitioner's sentence did not mandatorily impose life without parole and allows for the possibility of parole well within his expected lifetime, it does not violate constitutional norms."), report and recommendation adopted, 2015 WL 4304764 (C.D. Cal. July 10, 2015); Silva v. McDonald, 891 F. Supp. 2d 1116, 1131 (C.D. Cal. 2012) ("Notwithstanding the holdings in Roper, Graham, or Miller, this Court is not aware of any controlling Supreme Court precedent which holds, or could be construed to hold, that the sentence at issue here of 40-years-to-life with the possibility of parole [at the earliest at age 55, but not later than age 60], for a

juvenile who was 16 years old at the time of the nonhomicide crime, violates the Eighth Amendment.").

Consistent with that logic, courts have held that when parole eligibility under a term-of-years sentence occurs close to or exceeds the defendant's life expectancy, the sentence violates Graham. See, e.g., Moore v. Biter, 725 F.3d 1184, 1191–92 (9th Cir. 2013) (finding sentence of 254 years with no opportunity for parole eligibility within defendant's lifetime "materially indistinguishable from a life sentence without parole"); California v. Caballero, 282 P.3d 291, 295 (Cal. 2012) (finding a 110-year sentence equates a de facto life sentence and focusing on whether the parole eligibility date falls outside the defendant's life expectancy); Floyd v. Florida, 87 So. 3d 45, 46–47 (Fla. Dist. Ct. App. 2012) (per curiam) (holding defendant received a de facto life sentence where he would not be eligible for parole until age 85 which exceeded his life expectancy). Similarly, this Court previously reasoned that "term sentences virtually guaranteeing an offender will die in prison without meaningful opportunity for release could be considered a life sentence for the purpose of applying Graham or Miller." Boneshirt v. United States, No. CIV 13–3008–RAL, 2014 WL 6605613, at *8 (D.S.D. Nov. 19, 2014), cert. of appealability denied, No. 15–1118 (8th Cir. Apr. 15, 2015).

Given the foregoing, a comparison of Jensen's parole eligibility and life expectancy is necessary to determine whether the constitutional right recognized in Graham affects Jensen's case. First, Jensen correctly asserts that he is currently scheduled for initial parole eligibility on June 12, 2021. Doc. 11 at 2; Adult Corrections, Offender Locator, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited Feb. 1, 2019) (insert "Paul Jensen" into appropriate name fields). On that date, Jensen will be 39 years old. Jensen does not dispute this calculation of his initial parole eligibility. Doc. 10 at 9.

Jensen argues that his life expectancy is "without a question" before age 116, Doc. 11 at 7, incorrectly using his good time release date of July 27, 2097, rather than his initial parole eligibility date of June 12, 2021, to calculate his potential age at time of release. Doc. 11 at 2. Although it is impossible to determine precisely how long any one person has to live, the question comes up regularly enough, including previously before with this Court. See Springer, 2015 WL 6550876, at *21; Boneshirt, 2014 WL 6605613, at *10. Using government resources and actuarial tables, a 15-year-old male's life expectancy (Jensen's age at sentencing) appears to range from the age of 71.7 to 82.9. 26 C.F.R. § 1.72–9 at tbl.I (providing 15-year-old male would live 56.7 more years, or to the age of 71.7); 26 C.F.R. § 1.401(a)(9)–9 (providing 15-year-old male would live 67.9 additional years, or to the age of 82.9); Acturial Life Table, SSA, http://www.ssa.gov/oact/STATS/table4c6.html (last visited Feb. 1, 2019) (providing 15-year-old male would live 61.82 more years, or to age of 76.82). Thus, Jensen's initial parole eligibility date at age 39 is well within his lifetime.

Although Jensen is eligible for parole in two years, Jensen contends that this form of discretionary parole does not afford him a "meaningful opportunity" to obtain release. The statutes governing his parole eligibility provide that there is no right to parole per se; it is a form of discretionary conditional release that may be granted by the Board of Pardons and Paroles. SDCL § 24-15-1.1. Shortly after Jensen's conviction, South Dakota enacted a new set of statutes granting inmates parole as a matter of right, still subject to certain requirements and conditions, but such statutes do not have retroactive effect to Jensen's case. SDCL § 24-15A-1 (providing the new statute "do[es] not apply to persons sentenced to prison for crimes committed prior to July 1, 1996"); SDCL § 24-15A-38 (noting preconditions to parole supervision). Jensen seeks to use the difference between the two sets of statutes to support his argument that he is not entitled to a

meaningful opportunity for release. Jensen argues discretionary parole does not satisfy the "meaningful opportunity" for release under Graham as would mandatory parole.

Jensen's argument, however, misconstrues the Supreme Court's use of the phrase "meaningful opportunity." As stated in Graham and applied to Jensen, "[South Dakota] is not required to guarantee eventual freedom to [Jensen]." Graham, 560 U.S. at 75. Thus, the distinction between discretionary and mandatory parole has no bearing on the analysis. What South Dakota must do is afford Jensen "some meaningful opportunity to obtain release *based on demonstrated maturity and rehabilitation.*" Id. (emphasis added). Jensen has that opportunity beginning in two years.

When Jensen is 39, he will be "entitled to a hearing with the Board of Pardons and Paroles to present [an] application for parole." SDCL § 24-15-8. Jensen will be paroled if he can demonstrate that he has been confined for a length of time sufficient to rehabilitate himself, is no longer a danger to society, and has secured employment for the expected parole period in an environment where he will be free from criminal influences. Id. Unlike the petitioner in Graham, Jensen will have the opportunity to demonstrate that the bad acts he committed as a juvenile are not representative of his character. Graham, 560 U.S. at 79 (emphasizing that Graham's sentence "guarantee[d] he will die in prison . . . even if he spends the next half century attempting to atone for his crimes and learn from his mistakes"); cf. Budder v. Addison, 851 F.3d 1047, 1059 (10th Cir.) (holding that petitioner's sentence for nonhomicide offenses that required him to serve 131.75 years in prison before he would be eligible for parole violated Graham), cert. denied sub nom. Byrd v. Budder, 138 S. Ct. 475 (2017). If parole is denied, Jensen will be able to reapply eight months later. SDCL § 24-15-10. Jensen's parole eligibility presents a realistic and meaningful opportunity, perhaps even multiple opportunities, to obtain early release in his lifetime. Jensen

will have an opportunity to demonstrate that since his incarceration he has matured and has been rehabilitated. Unlike in Graham, at Jensen's resentencing it was not determined "at the outset" that Jensen was incapable of rehabilitation. Graham, 560 U.S. at 74, 79. Instead, Judge Brown commented at sentencing about the possibility of Jensen being rehabilitated and purposefully fashioned a sentence giving Jensen a chance for parole, rather than a life sentence without parole. Jensen, 2017 SD 18, ¶ 12, 894 N.W.2d at 401. Jensen has failed to show that the state court unreasonably applied the cruel and unusual punishment constitutional standards set forth in Graham because Graham explicitly applies to nonhomicide offenders, and even if Jensen was a nonhomicide offender, his sentence allows him a "meaningful opportunity" to obtain release.

### C. Miller v. Alabama and Montgomery v. Louisiana Challenge

Next, Jensen argues that he was sentenced in violation of the Supreme Court's holding in Miller, which is retroactively applied to juvenile murder cases by Montgomery. The Supreme Court held in Miller "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. at 2460. Miller consolidated the appeals of two juveniles, both of whom had received mandatory life sentences without parole for murders committed at age fourteen. Id. The Supreme Court reemphasized the "significant gaps" that exist between juveniles and adults, and required sentencing courts to consider youth mitigating factors—as well as the "characteristics and circumstances attendant" to the crime committed—when imposing a state's harshest sentence on juveniles. Id. at 2467–68. Because the sentences imposed in Miller were mandatory and wholly precluded consideration of mitigating youth factors, the Supreme Court invalidated the sentences under the Eighth Amendment.

The constitutional right recognized in Miller does not render Jensen's current sentence unconstitutional. The Supreme Court noted in the very first paragraph of Miller that there is a significant difference between mandated life imprisonment without the possibility of parole and the lesser sentence of "life *with* the possibility of parole." Id. at 2460. Although Jensen was a juvenile at the time of his crime and was convicted of a crime that mandated life without parole, he was resentenced in 2016 to a term of years. Additionally, Judge Brown did consider mitigating youth factors when resentencing Jensen. After a two-day evidentiary hearing, Judge Brown found that Jensen had matured and was not the same person as when he was convicted, that time served of 20 years was sufficient retribution, but that there was "a great deal yet that he needs to accomplish and to prove that he can function in society as a positive member of society." Jensen, 2017 SD 18, ¶ 12, 894 N.W.2d at 401. Judge Brown also informed Jensen that his earliest possible parole date is in 2021, merely two years from the date of this Opinion and Order at age 39. See Hack v. Cassady, No. 16-04089-CV-W-ODS, 2019 WL 320586, at *1, 4–6 (W.D. Mo. Jan. 24, 2019) (finding no Graham or Miller violation when a juvenile homicide offender, who was sentenced to mandatory life without parole, will become eligible for parole by a newly enacted statute after serving 25 years of incarceration); Juarez v. Davis, No. 3:16-CV-0843-G (BH), 2018 WL 2164507, at *5–6 (N.D. Tex. Mar. 28, 2018), report and recommendation adopted, 2018 WL 2150943 (N.D. Tex. May 10, 2018), appeal docketed, No. 18-10672 (5th Cir. June 7, 2018) (finding no Graham or Miller violation when a juvenile homicide offender was serving a life sentence with eligibility for parole after serving 40 years). Indeed, this Court in an earlier decision found that it was not cruel and unusual punishment for the state court to have sentenced Jensen's co-defendant, a slightly older juvenile who (unlike Jensen) did not fire the murder weapon at Hare, to a longer 261-year sentence with a more distant initial parole eligible date in 2029. Springer,

2015 WL 6550876, at *5–9. Jensen did not receive a sentence of life without possible parole as proscribed by Miller and Montgomery, so Ground I is dismissed.

### D. Abuse of Discretion Challenge

Jensen argues under Ground II that Judge Brown abused his discretion in violation of Jensen's constitutional rights by "leaving the Parole board to decide the [p]unishment of a minor, [w]hether he serves an actual life sentence or not." Doc. 1 at 7. The question before this Court under AEDPA is "whether the determination of the [Supreme Court of South Dakota] that there was no abuse of discretion was 'an unreasonable application of . . . clearly established federal law.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting 28 U.S.C. § 2254(d)(1)). In Miller, the Supreme Court held that a judge "must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." 132 S. Ct. at 2475. The Supreme Court of South Dakota held that Judge Brown did not abuse his discretion by the comments he made about the parole board because "the court did not leave for the parole board to decide Jensen's sentence." Jensen, 2017 SD 18, ¶ 22, 894 N.W.2d at 403. As previously discussed, Judge Brown held a two-day resentencing hearing where he considered mitigating circumstances of Jensen's youth. During Jensen's resentencing, Judge Brown commented on the unique circumstances of Jensen's case where he was being resentenced 20 years after he was initially sentenced and said, "[a]ctually, that's what our parole system is. Maybe this Court doesn't sit as a parole board. The Court probably isn't well equipped to perform that function." Id. ¶¶ 19–22, 856 N.W.2d at 402–03. However, Judge Brown subsequently sentenced Jensen in accordance with recent Supreme Court precedent as discussed above. Jensen has not shown that the holding of the Supreme Court of South Dakota finding Judge Brown not to have abused his discretion was

an objectively unreasonable application of clearly established federal law within the meaning of AEDPA. Therefore, Jensen is not entitled to federal habeas relief on Ground II.

**E. Certificate of Appealability**

When a district court issues an order under § 2254 adverse to the applicant it "must issue or deny a certificate of appealability." Rules Governing Section 2254 Cases in the U.S. Dist. Cts., Rule 11. This Court may issue a certificate of appealability only if a petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a substantial showing requires that the petitioner show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002). Although courts have disagreed about whether Miller should be applied to a term-of-years sentence, no reasonable jurist could find that Jensen was resentenced to a mandated life imprisonment without parole. And although courts have disagreed about whether Graham applies to a de facto life sentence without a chance of parole for nonhomicide offenders, courts agree that Graham is limited to nonhomicide offenders, which Jensen is not. Even if Graham did apply, no reasonable jurist could find that Jensen's sentence precludes him from the possibility of parole within his lifetime, or that his eligibility for parole does not afford him the meaningful opportunity to demonstrate maturity and rehabilitation to the parole board.

**III. Conclusion**

Therefore, it is hereby

ORDERED that Defendants' Motion to Dismiss, Doc. 9, is granted. It is further

ORDERED that Jensen's Motion for Appointment of Counsel, Doc. 8, is denied as moot. It is further

ORDERED that no certificate of appealability shall issue.

DATED this 15th day of February, 2019.

BY THE COURT:

/s/ Roberto A. Lange
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE